IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEBER-STEPHEN PRODUCTS, LLC, ) | |
| ) | |
| Plaintiff, ) | Case No.  16 C 4483 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| CHAR-BROIL, LLC, and W.C. BRADLEY CO., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Weber-Stephen Products LLC, ("Weber") has brought a three count complaint against Char-Broil, LLC, ("Char-Broil") and its parent, W.C. Bradley Co. ("Bradley"), alleging one count of federal trademark infringement pursuant to 15 U.S.C. §1114, one count of federal trade dress infringement, unfair competition and false designation of origin pursuant to 15 U.S.C. §1125(a), and one count of federal trademark dilution pursuant to 15 U.S.C. §1125(c).  Both defendants have moved to dismiss for lack of personal jurisdiction and venue or, in the alternative, to transfer the action to the Middle District of Georgia, for consolidation with an action in which Bradley has sued Weber for breach of contract and federal antitrust violations.  For the reasons set forth below, the court orders that this case be transferred to the Middle District of Georgia.

## FACTS

Weber is a Delaware limited liability company with its principal place of business in Palatine, Illinois.  It is a leading worldwide designer, developer, and manufacturer of outdoor grills and accessories.  It has been selling its iconic three-legged grill since the mid 1950's and owns several patents and trademarks covering its kettle grill.

Bradley is a Georgia corporation with its principal place of business in Columbus, Georgia. Char-Broil is a wholly owned subsidiary of Bradley, and a Georgia limited liability company with its principal place of business in Columbus, Georgia. It is a privately held manufacturer of charcoal, gas and electric outdoor grills, smokers and related accessories.

In the early 1970s, after the successful launch of Weber's three-legged iconic kettle grill, Bradley's predecessors began marketing the WILLIAM WEBSTER grill. In 1973, Weber's predecessor filed suit against Bradley in the Northern District of Illinois, alleging that Bradley's brand WEBSTER grill infringed Weber's: (1) utility patent in the tripod leg attachment system; (2) trademark; and (3) trade dress rights in the overall configuration of a three-legged kettle grill. Bradley filed a motion to dismiss for lack of personal jurisdiction, and the case was transferred to the Middle District of Georgia.

The parties reached a settlement agreement ("the 1974 Agreement") under which Weber paid Bradley money, waived any claim to damages, allowed Bradley to use Weber's patent under a covenant not to sue, allowed Bradley to sell off its remaining inventory of WILLIAM WEBSTER-branded kettle grills, and agreed that Bradley "shall have the right to continue to market the kettle grill, without restriction as to its configuration provided that it didn't use the WILLIAM WEBSTER name." Bradley continued to market the accused kettle grill for a phase-out period, then completely ceased selling the three-legged kettle grills until the September 2014 introduction of the allegedly infringing Char-Broil Kettleman grill.

Weber sued Bradley and Char-Broil on March 17, 2016 (the "March action"), in this district, alleging infringement and dilution of Weber's three-legged kettle grill design. After Bradley and Char-Broil raised the 1974 Agreement in discussions with Weber, on April 20,

2016, Weber sent an e-mail to Bradley, purporting to terminate the 1974 Agreement, dismissed the March action, and filed the instance case. The only difference between the March 17, 2016, complaint and the instant complaint is the allegation that Weber "formally and lawfully terminated any and all license rights prior to filing this Complaint."

On June 14, 2016, Bradley and Char-Broil filed an action in the Middle District of Georgia, alleging breach of contract and antitrust violations stemming from Weber's misuse of trademark law.

## DISCUSSION

### 1.    Personal Jurisdiction Over Char-Broil

Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process; and whether assertion of personal jurisdiction violates due process. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-76 (1985). Because the Lanham Act does not authorize nationwide service of process, the court must determine whether Char-Broil is subject to personal jurisdiction under the Illinois long arm statute. Valtech, LLC v. 18th Avenue Toys Ltd., 14 C 134, 2015 WL 603854, at *2 (N.D. Ill. Feb. 12, 2015). The Illinois long arm statute is coextensive with the limits of due process, collapsing the two inquiries into a single inquiry. Intercon Solutions, Inc. v. Basel Action Network, 969 F. Supp. 2d 1026, 1060 (N.D. Ill. 2013).

Weber argues that the court has personal jurisdiction over Char-Broil on the basis of specific jurisdiction. The court has specific jurisdiction over a non-resident defendant if: (1) the defendant has "purposefully directed [its] activities" at the forum state or purposefully availed itself of the privilege of conducting business in that state; (2) the alleged injury arises out of the

defendant's activities in the forum; and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1014 (Fed. Cir. 2009).

Weber argues that Char-Broil has purposefully availed itself to the privilege of conducting business in Illinois by actively marketing and selling the accused infringing grill to Illinois consumers through its active website and through big-box retailers located in Illinois, such as Ace Hardware. Illinois customers may also purchase the infringing grill on several online retail websites, including Target, Walmart, Menards, and Lowe's. Char-Broil attends vendor shows in Chicago, displaying and taking purchase orders for the infringing grill.

Char-Broil counters by arguing that even though it runs a website that is accessible, it does not target Illinois, and therefore cannot be haled into court in this state without offending the Constitution. be2 LLC., v. Ivanov, 642 F.3d 555, 558-559 (7th Cir. 2011); Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 800 (7th Cir. 2014). The general framework of decisions regarding personal jurisdiction as the result of an internet site is based largely on a "sliding scale approach" that divides internet activities into three categories. See Trost v. Jason Bauer, & Azuradisc, 2001 WL 845477, *11 (N.D. Ill. July 24, 2001). The first category, applicable in the instant case, consists of situations in which a defendant clearly does business over the internet such that the websites are clearly interactive, allowing the transaction of business between the end user and the website's owner. Id. The court has personal jurisdiction over transactions such as these because the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet. Id.

Char-Broil operates an active website that allows consumers to directly purchase the infringing grill. Illinois consumers may also purchase (and have purchased) the infringing grill on several online retail websites. Orders can even be placed through Amazon.com. Char-Broil's website also includes a "Where To Buy" page that lists the twelve closest big-box stores in this district where consumers can purchase the infringing grill. The listing for five or six stores on Char-Broil's website provides an even stronger basis for asserting specific jurisdiction over Char-Broil. Thus, Char-Broil has "created a substantial connection with the forum," and the court concludes that it has personal jurisdiction over Char-Broil. Advanced Tactical, 751 F.3d at 801.

### 2. Personal Jurisdiction Over Bradley

Char-Broil is a wholly owned subsidiary of Bradley. Weber argues that Bradley is subject to personal jurisdiction in Illinois because it exercises control over Char-Broil. Generally, however, the mere relationship of parent and subsidiary corporations is not in itself sufficient to subject either the parent to the jurisdiction of the forum state. LaSalle Nat'l Bank v. Vitro, 85 F. Supp. 2d 857, 864 (N.D. Ill. 2000).

In Illinois, under certain circumstances, personal jurisdiction over a subsidiary may supply personal jurisdiction over the parent. Id. The primary issue is how much control the parent has over the subsidiary. Id. In the instant case, Weber alleges that Bradley provides strategic plans to Char-Broil and monitors its overall performance of Char-Broil's operations. Bradley sets budget and performance goals for Char-Broil and reviews the performance of Char-Broil against those goals. Further, Bradley and Char-Broil share one corporate officer, the Chief Financial Officer and Treasurer of Char-Broil. Although director overlap between subsidiaries

and a parent corporation provides some evidence of control (or at least the potential for control), it is not, on its own, sufficient to except a case from the general rule that a subsidiary's contacts with a forum should not be used to obtain personal jurisdiction over a non-resident parent corporation. Id.  Consequently, the court concludes that Weber has failed to establish a prima facie case of personal jurisdiction over Bradley.

### 3. Transfer

Defendants have moved in the alternative to transfer the action to the Middle District of Georgia.  28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The court may transfer a case to another jurisdiction when: (1) venue is proper in both transferor and transferee courts; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice.  Moore v. Motor Couch Indus., Inc., 487 F.Supp.2d 1003, 1006 (N.D. Ill. 2007).  The court finds that venue is proper in both this district and the Middle District of Georgia because a substantial amount of the events giving rise to the claim occurred in both districts, including the sale of Char-Broil's Kettleman Grill and the alleged infringement of Weber's trademarked grill.

Turning to the other factors under 1404(a), "[i]n determining whether a forum is more convenient, the court must consider the private interests of the parties as well as the public interest of the court.  The factors related to the parties' private interests include: (1) the plaintiff's initial choice of forum; (2) the situs of material events; (3) the ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties." Aldridge v. Forest River, Inc., 436 F.Supp.2d 959, 960 (N.D. Ill. 2006).

Weber's choice of forum, even if it is Weber's home forum, "becomes less important, when it has "relatively weak connections with the operative facts giving rise to the claim." Berol Corp. v. BIC Corp., (N.D. Ill. July 3, 2002) (citing Von Holdt v. Husky Injection Molding Systems, Ltd., 887 F. Supp. 185, 188 (N.D. Ill. 1995)).   Although the sale of the infringing grill in this district is certainly significant, the accused product is sold nationwide, so the alleged infringement is occurring in several fora across the country.  Id.  Therefore, the connection to the instant forum is not particularly strong, and Weber's choice of forum in this case should not be accorded significant weight.

The court next considers the situs of material events.  Weber argues that a substantial part of the material events giving rise to Weber's claims occurred in Illinois and that Illinois is its home forum.  Defendants cite Intern. Truck and Engine v. Dow-Hammond Trucks, Co., 221 F. Supp. 2d 898, 899 (N.D. Ill. 2002), which held that in trademark infringement actions, "the situs of the injury is the location or locations where the infringing activity takes place."  Weber attempts to distinguish Intern. Truck and Engine, by arguing that in the instant case, unlike in Intern. Truck and Engine, there are no "imminent" proceedings in Georgia that require transfer.  Id.  The 1974 Settlement Agreement, however, has a substantial relationship to the present proceedings, was negotiated in and settled a Georgia action, and the validity of that agreement is currently being litigated in Georgia.  Further, the primary location of defendants' activities regarding the design and development occurred in Columbus, Georgia.  Accordingly, the court concludes that for purposes of the transfer analysis, the situs of material events is Columbus, Georgia.

The third factor the court considers is ease of access to sources of proof.  This court has observed that "infringement suits usually focus on the activities of the alleged infringer, its employees, and its documents rather than upon those of the plaintiffs." Berol Corp. v. BIC Corp., (N.D. Ill. July 3, 2002) (citing Wen Prods., Inc. v. Master Leather, Inc., 899 F. Supp. 384, 385 (N.D. Ill. 1995).  In the instant case, the design and development of the alleged infringing grill occurred in Georgia.  This factor weighs in favor of transfer.

The court next considers the convenience of the witnesses.  Weber claims that it intends to call many witnesses from the this district to testify concerning the design, development, and introduction of Weber's trademarked threelegged kettle grill project, and therefore wants to litigate in a court that can compel these witnesses to appear.  This is unpersuasive, however, because the witnesses identified are Weber's employees and within Weber's control.  Also, Weber will most likely call many witnesses from defendants' Columbus, Georgia headquarters because, again, infringement suits usually focus on the activities of the alleged infringer.  Intern. Truck and Engine, 221 F. Supp. 2d at 904.  At least one third party witness, who may find it difficult to travel due to age, resides in Georgia.  This factor leans toward transferring the instant action.

The last private factor the court considers is the convenience of the parties.  In terms of transporting witnesses, documents, and employees, this forum is obviously more convenient for Weber, while Georgia is obviously more convenient for defendants.  However, most of the focus will be on defendants' activities, documents, and staff.  Also, because Weber is already litigating a related action in Georgia, convenience supports transfer.

Finally, the court takes into account the interest of justice, or the "public interest factors," when evaluating whether transfer is convenient and fair.  These include: "(1) the relation of the communities to the issue of the litigation and the desirability of resolving controversies in their locale; (2) the court's familiarity with applicable law; and (3) the congestion of the respective court dockets and the prospects for earlier trial."  Energaire Corp. v. E. S. Originals, Inc., (N.D. Ill. Oct. 27, 1999).

With respect to the "community interest" factor, Weber argues that Illinois has an interest in redressing infringement that allegedly occurred within its borders.  This is certainly true.  Because the accused product is sold nationwide, however, the alleged infringement presumably occurs in many states, with several states having equal interests in redressing the alleged infringement.  Berol Corp. v. BIC Corp., (N.D. Ill. July 3, 2002).  Further, "the administration of justice is served more efficiently when the action is brought before a court that is 'closer to the action.'"  Id. (citing Paul v. Lands' End, Inc., 742 F. Supp. 512, 514 (N.D. Ill. 1990)).  Once again, the "action" is usually associated with defendants' activities which, in this case, are concentrated in Georgia. Id.

Weber argues that the second factor weighs against transfer, because both this court and Georgia "are likely to be equally familiar with the relevant principles of contract law." About.com, Inc. v. Aptimus, Inc., 2001 WL 503251, at *3 (S.D.N.Y. May 11, 2001).  The anticipated defenses, however, particularly whether the 1974 Agreement is valid and remains in force, will be decided under Georgia law, with which the Georgia court is undoubtedly more familiar.  The fact that those issues are already being litigated in the Middle District of Georgia weighs heavily in favor of transfer.

Finally, the last public interest factor, the congestion of the respective court dockets and the prospects for earlier trial, weighs in favor of transfer to Georgia. As defendants have pointed out, the median time from filing to trial for civil cases in Georgia ranges from 17.9 to 27.3 months. In the instant district, the median time from filing to trial has ranged from 26.3 to 38.6 months. Id. Similarly, the weighted filings per judge in each district, as well as the percentage of cases in each district that are over three years old, are both factors that favor transfer to the Middle District of Georgia.

## CONCLUSION

For the foregoing reasons, Char-Broil and Bradley's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is denied, and defendants' motion to transfer venue to the Middle District of Georgia pursuant to 28 U.S.C. § 1404(a) is granted.

**ENTER:**     October 5, 2016

_____
**Robert W. Gettleman**
**United States District Judge**